## IN RE ASSIGNMENT OF G. G. THOMAS.

**VENDOR AND PURCHASER:** Vendor's Lien—Absence of Necessary
1 Parties. A vendor's lien may not be established against land after it has been transferred by the purchaser and the new owners are not made party defendants.

**BANKS AND BANKING:** Deposits—Preference in Payment. One who
2 sells land to a party and receives in return the promissory note of a private bank which is operated by said party may not be said to be a depositor in the bank.

**BANKS AND BANKING:** Deposits—Preference—Non-applicability of 3 **Statute.** The statute (Sec. 9239, Code of 1924). which gives depositors in insolvent banks a preference in payment does not apply to private banks.

Headnote 1: 5 C. J. p. 1267 (Anno.); 39 Cyc. p. 1860.    Headnote 2: 7 C. J. pp. 628, 647, 748.    Headnote 3: 7 C. J. p. 748.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

NOVEMBER 16, 1926.

REHEARING DENIED FEBRUARY 19, 1927.

Action to determine the status of a claim in an assignment for the benefit of creditors. From the order of the district court claimant appeals.—*Affirmed.*

*F. T. Van Liew,* for appellant.

*C. B. Hextell* and *J. M. Parsons,* for appellee.

ALBERT, J.—I. At the times involved herein, G. G. Thomas was the owner of and conducting a private bank in the city of Des Moines, known as the Capitol Hill Bank. He was also president of a corporation apparently run in connection therewith, known as the Capitol Securities Company. On the 29th day of April, 1919, claimant, James F. Moran, sold to Thomas three pieces of property in the city of Des Moines, which will be designated by the numbers, respectively, 1, 2, and 3. On the same date he conveyed the same to Thomas for a total consideration of $4,500, which was paid by Thomas by delivering to him ten instruments, identical in form except as to due dates, the following being one of said instruments:

1. VENDOR AND PURCHASER: vendor's lien: absence of necessary parties.

"United States of America
"State of Iowa
"No. 1037                                        $450.00
"The Capitol Hill Bank of Des Moines, Iowa, for value received, hereby promises to pay James F. Moran, of Des Moines, Iowa, or to the registered holder hereof, the principal

sum of Four Hundred Fifty Dollars on the first day of May, 1925, and to pay interest on the said principal sum at the rate of four per centum per annum until paid, payable semi-annually on the first days of May and November in each year. Both principal and interest shall be payable in United States gold coin of the present standard of value at the banking house of the Capitol Hill Bank.

"Inasmuch as the proceeds received from the sale of this and like bonds are invested in first mortgages or other authorized securities which usually are made out for a long period of time, it is agreed that the maturity date of this bond is the essence of this contract.

"This bond is not negotiable, and is transferable on the books of the Capitol Hill Bank by the holder hereof in person or by attorney upon surrender of this bond properly endorsed.

"In witness whereof, the Capitol Hill Bank, by its cashier, signed and delivered this bond and has caused its seal to be hereunto affixed in the city of Des Moines, Iowa, this 29th day of April, 1919.

"[Signed]  G. G. Thomas, Cashier."

Five of these instruments have been paid, and the claim of appellant is bottomed on the remaining five.

On May 26, 1924, Thomas made an assignment for the benefit of creditors, naming A. B. Elliott as assignee therein, and Moran filed in the assignment proceedings a petition of intervention and amendment thereto, setting up the foregoing facts and asking that a vendor's lien be established, and that his claim be allowed by said assignee as a preferred claim. Later, he amended his claim by including certain allegations of false and fraudulent representations made by Thomas to induce him to accept the aforesaid written instrument on which his claim is based. The case was sent to the referee, and the finding of the referee approved by the lower court. In the finding of the referee it is stated:

"This claimant originally filed his claim on the doctrine of a vendor's lien, which position has been tacitly withdrawn and the claim based upon the alleged fraud of G. G. Thomas."

Notwithstanding this finding by the referee, the claimant insists upon and argues the question of vendor's lien.

Property No. 1 was sold by Thomas to one McQuiston, and contract was put up with one Blanchard, as trustee. Later, this contract was sold to the Capitol Securities Company, and deed made therefor. It is apparent, therefore, from the record that the assignee herein is correct in his statement when he testifies that he received nothing from the McQuiston property.

Property No. 2 was sold to one Blanchard, and the deed therefor put up with one Emerson, as trustee. This transaction seems to be something of the following nature: The Capitol Hill Bank had issued to Emerson certain bonds or certificates in the sum of $14,000, which were and are still unpaid. To secure this indebtedness, the Capitol Hill Bank placed in the hands of one Harder, as trustee, certain real estate contracts and deeds (among which was the contract with Blanchard); and after his appointment as assignee, Elliott, under order of the court, settled this claim with Emerson by turning over all the property covered by the agreement with Emerson and the trustee to Emerson, and the property thus conveyed or thus transferred was insufficient to satisfy Emerson's claim by the amount of $2,281.79, which amount was ordered by the court to be allowed as a general creditor's claim in favor of the said Emerson. It is apparent, therefore, that, as the assignee testified, he received nothing out of the proceeds of this particular piece of property.

As to Property No. 3, when Thomas acquired the title to this piece of property, he placed a mortgage thereon for $1,000. He then sold the property to one Lanfield, and at the time the assignee took possession of the property, there was $944 still due on this contract. The Lanfield contract is not set out in the record, nor are the details thereof referred to. The holder of the $1,000 mortgage was urging its payment, and, by arrangement, the $944 still due was applied in satisfaction of the said $1,000 mortgage, thus releasing Thomas's liability on the mortgage. It is quite apparent that this property was not very valuable, and, if Thomas in fact contracted to convey this property to Lanfield with a clear title, he would have to pay the $1,000 mortgage. We see no harm in the method by which the mortgage was disposed of.

All of these transactions seem to have been in good faith, and there is nothing in the record to show that there was any sacrifice of this property. None of the purchasers of these three

pieces of property are parties to this litigation. The whole record shows, and confirms the assignee in his statement, that he received nothing whatever from any of these three pieces of property. Whether or not the claimant would have a vendor's lien, as against these purchasers, is not before us for consideration, and could not be; because, as stated, none of the purchasers are in court. So long as, under the record, none of the proceeds of these pieces of property came into the hands of the assignee, we are not concerned with the question of vendor's lien. There is no claim that the assignee herein breached his duty as an officer of the court in sacrificing any property that came into his hands, nor is he charged with any dereliction of duty in husbanding the assets of the estate.

II. It is insisted on the part of claimant that he was induced to accept these instruments by reason of certain false and fraudulent representations, and therefore that he is entitled to have his claim established against said bank as a preferred claim.

In the first place, claimant had no dealing or transaction whatever with the bank in question. His transaction was wholly with Thomas, as a private individual, and he was paid for his property with ten instruments, a copy of which is hereinbefore set out. Upon a review of this instrument, it is our opinion that the same is, in effect, the promissory note of the bank to pay the amount therein specified. It is not a certificate of deposit. There is nothing in the instrument itself or in the transaction, as related in the evidence, in any form or manner that would tend to lead one to the conclusion that, when claimant became possessed of these instruments, he was a depositor in said bank. If we pass the question as to whether the statutory provisions as to preference have to do with private banks, but assume that they have, the statutes under which claimant seeks to have his claim allowed herein, creating preferences, only apply to persons who are depositors in a bank, and not to general creditors. As a matter of fact, claimant herein deposited nothing in said bank, and therefore we can see no reason why he should be classed as a depositor. The referee found, and the district court approved the finding of the referee, that Moran's claim,

2. BANKS AND BANKING: deposits: preference in payment.

as filed in the assignment, should be allowed, and given status as that of a general creditor.

In closing, attention is called to the fact that Section 9239, Code of 1924, and the other sections correlated thereto, as to how the proceeds of a bank shall be restricted, "giving preference in payment to depositors," have nothing whatever to do with private banks, as, in such an institution, there seems to be no preference among creditors, except in cases of trust funds or prior incumbrance or lien.

3. Banks and Banking: deposits: preference: non-applicability of statute.

With this finding we agree, and therefore find no error in the ruling of the district court.—*Affirmed.*

De Graff, C. J., and Evans and Morling, JJ., concur.